**Nancy R. ELM, formerly known as Nancy R. Key, Appellant (Plaintiff below),**

**v.**

**Clyde H. KEY and Marie Key, Appellees (Respondents below),**

**George S. Key, (Defendant below).**

**No. 3904.**

Supreme Court of Wyoming.

Jan. 28, 1971.

Charles R. Spratt, Buffalo, for appellant.

Fagan & Fagan and Thomas J. Fagan, Casper, for respondents.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This controversy over child custody is an aftermath of a 1967 divorce action by Nancy R. Key (now Mrs. Dennis L. Elm) against her then husband, George S. Key.[1] In the original case the wife charged indignities and sought among other things custody of the minor child, Howard Dean Key (nine months old at the time of the decree and three years at the time of the latest hearing); the husband countered with an identical accusation and a like request for custody of the child. The court granted her the divorce and confirmed an agreement of the parties as to child custody by which the mother was to have the child from September 1 to May 31, the father from June 1 to August 31, thereafter until the child was twenty-one or emancipated. The father was to pay support, and each party was to have liberal weekend and holiday visitation rights. The mother remarried in 1968 and the following year the parties stipulated it "to be in the best interest of said minor child that the Father have custody of him," and the court there-

1. The parties had married in January 1966, and their child was born May 1, 1967.

upon confirmed and approved such stipulation by order. In January 1970 the father, George S. Key, died in an automobile accident and three months thereafter the mother moved the court for an order directed to the Clyde H. Keys instructing them to appear in court and show cause why she should not be allowed to take custody of the child. In an affidavit filed simultaneously she stated it was in the best interest and welfare of the child for him to be placed in her custody and asserted that the grandfather and his wife, Mr. and Mrs. Clyde H. Key, with whom the child resided, had refused to let her assume full custody. Order to show cause issued against the Keys, who countered the mother's affidavit and sought custody in themselves. After a hearing at which evidence was adduced by the parties, the court noted the death of the father had created a change of circumstances necessitating the placing of the youngster in the custody of proper persons, found Mr. and Mrs. Clyde H. Key so qualified, and entered an order accordingly, allowing visitation rights to the mother. She has appealed from the order, urging error as a matter of law in the court's disregarding § 3–6, W.S.1957, denying custody to her of the child upon the death of his father, and in determining that the best interests of the child required custody be granted to the paternal grandparents rather than to her. The Keys rejoin, saying the death of the child's father created a change of circumstances necessitating the modification of the original decree as to custody of the minor child, which determination was properly made in the best interests of the boy and that § 3–6 does not require the awarding of custody of a minor child to the surviving parent if the court finds that the best interests of the minor would be served by custody in another.

The mother's argument here is somewhat inconsistent when she urges that the trial court committed an error in law in disregarding § 3–6 and simultaneously concedes that any superior right of the mother to the child which the statute gives will be ineffectual if for some compelling reason the best interests of the child require that she be denied custody. Thus she acknowledges that under any circumstance the best interests of the child must control and merely argues that there was no compelling reason for denying custody to her. We look then at the evidence bearing on that aspect.

There was no dispute about the fact that the boy had been left with the Clyde H. Keys from time to time after his birth, even when the mother under the stipulation had a right to legal custody. Sometimes this was as babysitters but often the child remained with them for considerable periods, and it was unquestioned that they were financially and physically able to care for him. From April 1969 when the legal custody was given to the father, the actual custody was continuous in them, and on the trial the mother admitted that they had taken good care of the youngster. On examination she acknowledged having previously told other persons that she would never take the child back to her home as long as Mr. Elm was there, but later had said she wanted to try taking the baby back to the home to give the husband a chance to prove himself. Clyde H. Key testified that after his son's death he was discussing the "money situation" and "estate" with Mrs. Elm and that she had told him Mr. Elm had beat the baby when he was a year and a half or younger and that she would not care to take the child back, but Mrs. Elm testified in response that she had merely told him Mr. Elm had spanked the baby too hard. However, she acknowledged that the present effort to get the child had been instituted at the request of Mr. Elm. These circumstances, disclosed by evidence which was undisputed, would be ample reason for the court's finding that it was to the best interests of the child that his care, custody, and control be placed in the Clyde H. Keys, subject to reasonable visitation rights in the mother. There was no abuse of discretion.

Affirmed.