Fred A. QUENZER, Appellant
(Defendant),

v.

Nola Kathleen (QUENZER),
Appellee (Plaintiff).

No. 5680.

Supreme Court of Wyoming.

Oct. 29, 1982.

Rehearing Denied Nov. 17, 1982.

**296**

Donald J. Sullivan, Cheyenne, for appellant.

W.H.C. Venable, Jackson, and Lea Jacobs, Jackson, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

THOMAS, Justice.

The task confronting our court in this case is that of reconciling, in the context of the power to enter a judgment modifying a child-custody decree, the laws of the State of Texas, the State of Wyoming, and the United States of America. The question of custody of the parties' daughter is before the courts for the fourth time in seven years with each proceeding except this one being instituted by the father. A district court in Texas entered an Order of Modification in Suit Affecting Parent-Child Relationship, modifying the child-custody provisions of an Order entered in a circuit court of the State of Oregon essentially by awarding custody of the child to the father. The circuit court in Oregon had entered a judgment essentially confirming the child-custody provisions, but modifying the visitation provisions, of a Decree of Divorce which had been entered by the Court of Domestic Relations in Texas, and which had awarded primary custody of the child to the mother. Thereafter, the district court in Wyoming entered its Order modifying the Texas modification order by restoring primary custody to the mother. The district court in Wyoming, while denigrating the authority of the Texas court to enter a modification order, essentially relied upon its own authority to modify the provisions relating to the custody of the child based upon a change in circumstances. This appeal is by the father from the Order entered by the district court in Wyoming, which not only modified the custody provisions of the order entered by the Texas district court, but also imposed personal judgments upon the father. Having satisfied ourselves of the jurisdiction of the district court in Wyoming to enter its Order, we shall affirm the district court.

The appellant, Fred August Quenzer, Jr., and the appellee, Nola Kathleen Quenzer (now Sharrard), were divorced in Texas in 1975. Primary custody of the parties' daughter was awarded to the mother pursuant to the Decree of Divorce which followed the provisions of a Property Settlement Agreement previously entered into by the parties. Not long after the divorce the mother removed herself from Texas with the result that the father could not exercise weekend visitation rights as provided for in the Decree of Divorce. The response of the father was to refuse to return the child after a visit in Texas in June of 1976, and the mother had to return to Texas and prosecute a habeas corpus proceeding to secure the daughter's return to her custody. She was successful in that endeavor.

In August of 1977 the father petitioned the circuit court in Oregon to enforce the visitation provisions of the Texas decree in accordance with Oregon's adoption of the Uniform Child Custody Jurisdiction Act. A cross-petition by the mother sought modification of the Texas decree and also arrearages in child and spousal support payments, and an increase in the amount of monthly child support. Other relief also was requested. The father then filed a motion for a change in custody of the daughter. In so doing the father conceded that the Texas court did not have continuing jurisdiction to determine custody issues. Essentially the Oregon decree continued custody in the mother; held the mother in contempt for failing to comply with the visitation provisions of the Texas decree; modified the visitation provisions of the Texas decree so as to require the father to post a $1000 bond to guarantee the return of the daughter at the conclusion of court-ordered visitation and changing the times and duration of the father's visitation privileges; granted judgment for arrearages in child and spousal support against the father; found the father in contempt for willful failure to comply with the child and spousal support provisions of the decree; and denied the mother's motions for increased child support and payment of attorneys fees and costs. Although appealed, that judgment was affirmed by the Oregon Court of Appeals.

Following the entry of the order in the circuit court in Oregon, the mother moved to Eugene, Oregon, and then spent the summer of 1979 traveling in Hawaii, staying there with friends. In August of 1979 the mother married her present husband and the mother, daughter and the stepfather moved to Dillingham, Alaska, where they remained until January of 1980. From Dillingham they moved to a smaller native village of Aleknagnik, where they remained until June of 1980. In June of 1980 the daughter was sent to visit in Texas. The father was entitled to custody for a six-week period starting on the second Sunday of June of each year. During the period of this visit the mother and her husband moved from Alaska to Teton County, Wyoming, where they intended to establish a permanent residence. On July 8, 1980, which was less than a week before the scheduled visitation in Texas was to end, the father filed a motion in the Texas district court, seeking a modification in custody of the child. Process was served upon the mother in Eugene, Oregon, where she was visiting prior to returning to Wyoming.

Thereafter the mother instituted a separate habeas corpus proceeding in the Texas court, seeking enforcement of the Oregon decree returning the child to her custody. The return to her custody was ordered by the Texas court, and on August 16, 1980, the mother and daughter left Texas, and since that time they have resided in Wyoming. The order formalizing the judgment of the court was entered on October 8, 1980. In the meantime the modification proceeding had been held in abeyance pending a determination of the status of the mother, who had attempted to appear specially. The Texas court, by the same judge who had heard the habeas corpus proceeding, entered an order denying the mother's special appearance and ordering the case to proceed to trial on the merits. Thereafter, in January of 1981, trial was held with respect to the proceeding seeking modification of custody. On January 12, 1981, an

Order of Modification in Suit Affecting Parent-Child Relationship was entered in Texas in which the court held that custody should be given to the father with visitation rights to the mother. January 26, 1981, was specified as the date for transferring possession of the child, and the Texas court did enter findings that it had jurisdiction and that the mother had not been a continuous domiciliary or resident of any state for six months preceding the filing of this action. It further found that no other court had or has continuing jurisdiction of the suit or of the daughter and that it had jurisdiction of the child because it was the most convenient forum to determine the best interest of the child.

The proceeding in Wyoming was commenced on February 23, 1981. The Order in the Wyoming proceeding was signed on February 22, 1982, and entered on March 2, 1982. The Wyoming court found that it had jurisdiction under the Wyoming version of the Uniform Child Custody Jurisdiction Act; that the mother was the proper person to have custody of the child; and that the circumstances before the court showed that any orders of any court in the past should be modified, because of a change in circumstances, to give the mother custody of the child. While critical of the Texas proceeding, the Wyoming district court premised its authority upon the existence of jurisdiction pursuant to Wyoming statute, and it did proceed to modify the Texas modification order by restoring permanent custody to the mother; denying visitation rights in the father "at the present time unless substantial safeguards are erected in that regard"; requiring the payment of past due child support and past due spousal support; and ordering that the father should pay for attorneys fees and costs in connection with litigation of the matter. The father has appealed from this order.

The father, in his brief, states the issues in this appeal as follows:

"1. Whether the trial court erred in exercising jurisdiction in the child custody modification proceeding.

"2. Whether the trial court erred in denying full faith and credit to the existing Texas custody decree.

"3. Whether the trial court erred in exercising *in personam* jurisdiction over Appellant.

"4. Whether the trial court denied Appellant due process of law and abused its discretion."

No separate statement of the issues is made on the part of the mother, who contented herself with addressing the issues as presented by the appellant.

■ We shall proceed to deal initially with the second issue asserted by the father. The father urges in support of his position the requirements of the Full Faith and Credit Clause of the Constitution of the United States of America. The Constitution provides in Art. IV, § 1, as follows:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Cases from the Supreme Court of the United States, however, have taught that the finality of a custody determination under the Full Faith and Credit Clause depends on whether the court originally making the custody determination retained the power under its own laws subsequently to modify its original order. In *People of State of New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 614, 67 S.Ct. 903, 905, 91 L.Ed. 1133 (1947), the court stated:

"So far as the Full Faith and Credit Clause is concerned, what Florida [the original divorce jurisdiction] could do in modifying the decree, New York [the forum state] may do. * * * [T]he State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered."

This holding has been reiterated in two subsequent child-custody decisions. *Kovacs v. Brewer*, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); *Ford v. Ford*, 371 U.S.

187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962). See also *Linch v. Harden,* 26 Wyo. 47, 176 P. 156 (1918).

■ The holding of these cases is that if res judicata does not act as a bar to the modification of a custody decree under the law of the state exercising original jurisdiction, then the forum state is not precluded from exercising its own jurisdiction to modify the provisions of the decree relating to child custody. In the instant case, Texas, by statute and judicial interpretation, allows the modification of a custody decree upon a showing of a substantial change in circumstances and that the modification will be in the best interest of the child. Tex.Fam.Code Ann., tit. 2, § 14.08 (Vernon 1975); *Perry v. Ponder,* Tex.Civ.App., 604 S.W.2d 306 (1980). Under the rule pronounced in *People of State of New York ex rel. Halvey,* supra, it follows that upon such a showing Wyoming can exercise its own jurisdiction to modify the custody determination made by the court in Texas.

The father argues earnestly, however, that the Parental Kidnaping Prevention Act of 1980, Pub.L. 96–611, 94 Stat. 3569 (1980), substantially changes the rule announced in the cases cited above, and forecloses the Wyoming court from modifying the modification decree entered by the Texas court. As codified at 28 U.S.C.A. § 1738A, the pertinent provisions of this Act, found in § 8(a), are attached as Appendix A to this opinion.

This legislation, if applicable, must be afforded primary consideration under the Supremacy Clauses of our federal and state constitutions. Constitution of the United States, Art. VI, Cl. 2; Constitution of the State of Wyoming, Art. 1, § 37. By this statute Congress has provided for the effect to be given to the judicial proceedings in the state originally exercising jurisdiction,

and thus has defined what full faith and credit requires in such instances.[1]

■ Any child-custody determination made consistently with the provisions of the Parental Kidnaping Prevention Act is required to be enforced according to its terms by the courts of every other state (28 U.S.C.A. § 1738A), and the authorities of another state are not permitted to modify except as provided in subsection (f) of 28 U.S.C.A. § 1738A such a child-custody determination. Subsection (f), which is referred to, provides as follows:

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another state, if—

"(1) it has jurisdiction to make a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

The two-pronged test which must be met is: (1) Wyoming must have jurisdiction under its own laws to make a child-custody determination; and (2) Texas must no longer have jurisdiction or must have declined to exercise jurisdiction. *Pierce v. Pierce,* Mont., 640 P.2d 899 (1982); *State ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181 (1981); *Leslie L.F. v. Constance F.,* 110 Misc.2d 86, 441 N.Y.S.2d 911 (1981).

There is, however, a threshold test which must be applied before the two-part test must be met. The modification order in Texas must have been made consistently with the provisions of the Parental Kidnaping Prevention Act. Subsection (c) of the Parental Kidnaping Prevention Act provides as follows:

"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

1. It would appear that this legislation was intended to supplement existing state legislation such as the Uniform Child Custody Jurisdiction Act to promote interstate judicial cooperation and communication, facilitate the enforcement of custody and visitation decrees of sister states, discourage interstate controversies over child custody, prevent jurisdictional competi-

tion and conflicts between state courts, and to deter parental kidnapping and forum shopping. See § 7(c), Pub.L. 96–611, 94 Stat. 3569 (1980). See also comment, The Uniform Child Custody Jurisdiction Act And Parental Kidnapping Prevention Act: Dual Response to Interstate Child Custody Problems, 39 Wash. & Lee L.Rev. 149 (1982).

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

"(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) The court has continuing jurisdiction pursuant to subsection (d) of this section."

The statutory basis for the exercise of jurisdiction by the Texas court is Tex.Fam. Code Ann., tit. 2, § 11.045 (Vernon Cum. Supp.1982), which provides:

"(a) A court has original jurisdiction of a suit affecting the parent-child relationship, whether or not the child is physically present in the state, only if one of the following conditions is met:

"(1) this state:

"(A) is the principal residence of the child at the time the proceeding is commenced; or

"(B) was the principal residence of the child at any time during the six-month period before the proceeding was commenced, and a parent or person acting as a parent resides in this state at the time the proceeding is commenced; or

"(2) it is in the best interest of the child that a court of this state assume jurisdiction because:

"(A) the child and the child's parents or the child and at least one contestant have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(B) the child is physically present in this state and there is a serious immediate question concerning the welfare of the child; or

"(C) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine issues concerning the child.

"(b) The physical presence in this state of the child or of the child and one of the contestants is alone insufficient to confer jurisdiction to the court to make a determination under this subtitle."

The father argues that the Texas court was exercising jurisdiction under subsection (a)(2)(A) of this statute. We agree that this was so, and we conclude that the initial requirement of a child-custody determination made consistently with the provisions of the Parental Kidnaping Prevention Act is satisfied.

▮ The Texas determination, however, was not made consistently with the second

requirement of the Parental Kidnaping Prevention Act, in that its exercise of jurisdiction did not fit any of the conditions contained in 28 U.S.C.A. § 1738A(c)(2). Obviously Texas was not the home state of the child under subsection (A) of that provision. The father cannot rely upon subsection (B) of that provision because the daughter had been living in Alaska for at least six consecutive months immediately preceding the time she went to visit the father, and Alaska would be the home state of the child as defined in 28 U.S.C.A. § 1738A(b)(4). The Texas court therefore could not, and it did not, find that no other state would have jurisdiction under subparagraph (A) of 28 U.S.C.A. § 1738A(c)(2)(A). Subsections (C), (D), and (E) of the title similarly are not applicable, and we must conclude that the jurisdiction of the district court in Wyoming was not foreclosed by the provisions of the Parental Kidnaping Prevention Act because the modification order entered in the State of Texas was not a "custody determination made consistently with the provisions of this section by a court of another State."

Having concluded that neither the Full Faith and Credit Clause nor the provisions of the Parental Kidnaping Prevention Act foreclosed the exercise of jurisdiction by the district court in Wyoming, we still must consider whether the exercise of that jurisdiction was precluded under some provision of Wyoming law. Our conclusion with respect to this proposition will also dispose of the first issue urged by the father in his appeal. Section 20–5–104, W.S.1977, is the provision governing the jurisdiction of Wyoming courts in child-custody proceedings, and it provides as follows:

"(a) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

"(i) This state is the home state of the child at the time of commencement of the proceeding, or was the child's home state within six (6) months before commencement of the proceeding and the child is absent from the state because of his re-moval or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(ii) It is the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships;

"(iii) The child is physically present in this state and has been abandoned or if it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(iv) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs [subdivisions] (i), (ii) or (iii) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child and it is in the best interest of the child that this court assume jurisdiction.

"(b) Except under paragraphs [subdivisions] (a)(iii) and (iv) of this section, physical presence in this state of the child or of the child and one (1) of the contestants is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(c) Physical presence of the child, while desirable, is, not a prerequisite for jurisdiction to determine his custody."

Both subsections (a)(i) and (a)(ii) in this instance justify the exercise of jurisdiction by the courts of the State of Wyoming. In § 20–5–103(a)(v), W.S.1977, "Home state" is defined as follows:

" * * * 'Home state' means the state in which the child immediately preceding the time involved has lived with his parents, a parent or a person acting as parent, for at least six (6) consecutive

months, and in the case of a child less than six (6) months old the state in which the child has lived since birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period; * * *"

The record is clear that the daughter had resided with her mother in Wyoming from the time of the conclusion of the habeas corpus proceeding in Texas until the commencement of the Wyoming proceeding, which was more than six months. It is equally apparent that there did exist in this instance a significant connection with the State of Wyoming, and that there was available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships. Friends, neighbors, school personnel, and a professional psychologist were all present to assist the court in making determinations with respect to the best interest of the child. We note by contrast that the testimony in the Texas proceeding duplicated some of this testimony, and that the Texas witnesses appeared primarily as character witnesses for the father and his second wife. Any balanced comparison of these factors results in a clear preference for the State of Wyoming as the appropriate forum. The district court made its determination, after weighing the factors identified in *State ex rel. Klopotek v. District Court of Sheridan County,* Wyo., 621 P.2d 223, (1980), that it was in the best interest of the child that it exercise its jurisdiction. The evidence present in the record sustains this determination, and in the absence of some other inhibiting factor or prohibition the district court had jurisdiction over this matter under Wyoming law.

The father, however, points to the provisions of § 20-5-107(a), W.S.1977, and urges that this section prohibits the exercise of jurisdiction in Wyoming. Section 20-5-107(a), W.S.1977, provides:

"(a) A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the same child was pending in a court of another state

exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."

Again the record is clear that when this proceeding was commenced in the Wyoming district court the proceedings in the courts of Texas had been concluded, and become final there according to local law. Since there was no proceeding pending in Texas, § 20-5-107(a) did not interfere with the exercise of jurisdiction by the district court in Wyoming. We note in this regard that the father apparently has abandoned his claim that the district court abused its discretion by failing to decline jurisdiction as an inconvenient forum in favor of Texas under § 20-5-108, W.S.1977.

Relying upon still another contention, the father argues that the district court committed error in asserting and exercising jurisdiction to determine child custody in the light of §§ 20-5-114 and 20-5-115(a), W.S. 1977. The provisions of those statutes read as follows:

"§ 20-5-114. Recognition and enforcement of initial or modification decree made by court of another state.

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act, or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act."

"§ 20-5-115. Modifying custody decree made by court of another state.

"(a) If a court of another state has made a custody decree a court of this state shall not modify that decree unless it appears that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the de-

cree, and the court of this state has jurisdiction."

The mother meets these contentions by asserting that the district court correctly refused to recognize and enforce the Texas order because the statutory provisions in Texas are not substantially in accordance with the Uniform Child Custody Jurisdiction Act, and she asserts that the factual circumstances were such that the jurisdictional standards of the Uniform Act were not met in Texas. See *Allison v. Superior Court of County of Los Angeles,* 99 Cal. App.3d 993, 160 Cal.Rptr. 309 (1979). She points out that, while tit. 2, § 11.-045(a)(2)(A), Tex.Fam.Code Ann. (Vernon 1975), facially is similar to § 20–5–104(a)(ii), W.S.1977, the State of Texas has no provision similar to § 20–5–109(b), W.S. 1977. This latter provision provides as follows:

> "(b) Unless required in the interest of the child and subject to W.S. 20–5–115(a), the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court in its discretion and subject to W.S. 20–5–115(a) may decline to exercise jurisdiction."

The record before us discloses that while the father filed his action for modification in Texas during the period that the daughter was visiting him pursuant to the provisions of the Oregon decree, his retention of custody beyond the time provided by the decree was wrongful and in derogation of the mother's rights. We agree with the mother that *State ex rel. Klopotek v. District Court of Sheridan County,* supra, teaches that a Wyoming court under these circumstances would not be permitted to exercise its jurisdiction to modify a custody decree.

It would appear from the circumstances that the policy of the State of Texas differs. Consequently, if the issue in this case were confined to the enforcement of the Texas order it well might be that the doctrine of res judicata, combined with the provisions of our Wyoming law and the Parental Kidnaping Prevention Act, would require the recognition and enforcement of the Texas decree. Contrary to the finding of the Wyoming district court, the issue of the mother's general appearance in Texas probably was governed by the principle of res judicata. Still the availability of the jurisdiction of the district court to modify the provisions of the Texas order is not foreclosed. Unless the prohibition contained in § 20–5–115(a), W.S.1977, is applicable, the district court in Wyoming had the power to act and enter its own order modifying the custody provisions upon a sufficient showing of a change in circumstances to warrant a different decree. *Salmeri v. Salmeri,* Wyo., 554 P.2d 1244 (1976); *Tanner v. Tanner,* Wyo., 482 P.2d 443 (1971); and *Leitner v. Lonabaugh,* Wyo., 402 P.2d 713 (1965).

■ We conclude that it is the duty of the Wyoming court to determine the applicability of § 20–5–115(a), W.S.1977, i.e., to determine whether the Texas court at the time the jurisdiction of the Wyoming court was exercised had jurisdiction under jurisdictional prerequisites substantially in accordance with the Uniform Child Custody Jurisdiction Act or had declined to assume jurisdiction to modify the decree. *Leslie L.F. v. Constance F.,* supra. This determination, which must be made by the Wyoming court, is to be made not at the commencement of the Wyoming action, but rather at the time of the hearing on the matter in light of the evidence presented. *In re Marriage of Hobson,* 110 Cal.App.3d 884, 168 Cal.Rptr. 345 (1980). Other courts which have construed this Uniform Child Custody Jurisdiction Act generally have applied a two-stage test in determining whether the local court had jurisdiction to modify a foreign custody determination. First the court must consider whether the

court whose decree is sought to be modified no longer has jurisdiction under standards such as those set forth in § 20–5–104, W.S. 1977, and secondly it may consider whether the court whose decree is sought to be modified has declined jurisdiction to modify its prior judgment. If either of these tests is met, then the forum state must determine whether it has jurisdiction under its own laws. *In re Marriage of Hobson,* supra; *In re Marriage of Mintle,* Iowa, 294 N.W.2d 564 (1980); *Application of Pierce,* Mont., 601 P.2d 1179 (1979); *Leslie L.F. v. Constance F.,* supra; and *Dragoo v. Dragoo,* 99 Wis.2d 42, 298 N.W.2d 231 (1980).

■ On the date that the Wyoming court held its hearing the Texas court no longer had jurisdiction under standards which substantially comply with the Uniform Child Custody Jurisdiction Act. This test having been met, the Wyoming court was not foreclosed from exercising jurisdiction by the provisions of § 20–5–115(a), W.S.1977. We justify this holding first by alluding to one of the general purposes of the Uniform Child Custody Jurisdiction Act set forth in § 20–5–102, W.S.1977, as follows:

> "(a) The general purposes of this act are:
>
> \* \* \* \* \* \*
>
> "(iii) To assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;"

We find in this statement of policy an explicit recognition that the paramount consideration of the best interest of the child mandates that custody determinations be made in the forum having the best access to the relevant evidence. The Reporter for the Special Committee of the Commissioners on Uniform State Laws stated the proposition thusly:

> " \* \* \* As a general proposition the state in which there is the best opportunity to

investigate the facts is most qualified to take jurisdiction." Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand. L.Rev. 1207, 1221 (1969).

In the Commissioner's Note following § 3 of the Uniform Child Custody Jurisdiction Act, it is stated that there "must be maximum rather than minimum contacts with the state." 9 U.L.A., Child Custody Jurisdiction Act, § 3, p. 124 (1979). Courts which have interpreted this provision similarly have held that by requiring optimal access to the relevant evidence the best interest of the child will be served. *In re Marriage of Weinstein,* 87 Ill.App.2d 101, 42 Ill.Dec. 243, 408 N.E.2d 952 (1980); *Slidell v. Valentine,* Iowa, 298 N.W.2d 599 (1980); and *Leslie L.F. v. Constance F.,* supra. See also Moran, The Uniform Child Custody Jurisdiction Act: An Analysis of Its History, A Prediction of Its Future, 84 W.Va.L. Rev. 135, 146–147 (1981).

At the time that Wyoming exercised its jurisdiction in this matter it was the "home state" under the Uniform Child Custody Jurisdiction Act and § 20–5–104(a)(i), W.S. 1977. The potential basis for the assertion of jurisdiction in Texas is the Texas counterpart of § 20–5–104(a)(ii), W.S.1977. At the pertinent date the state which had the most significant connections with the child and her mother was Wyoming. In February of 1982 the daughter had been present in Wyoming nearly eighteen months. She was attending local schools and receiving weekly counseling in Jackson, Wyoming, from a professional psychologist. Evidence of the mother's parental fitness and her relationship with the daughter was most accessible in Wyoming. Most importantly, however, the child's presence in this state gave the district court the best opportunity to gather evidence concerning the daughter's emotional and personal development, as well as furnishing to it the opportunity for the child to testify directly with respect to her early allegations in the Texas habeas corpus proceeding of drug use and mistreatment at the hands of her mother. She had

earlier recanted that testimony by a letter to the Texas judge, and the Wyoming court had the opportunity to evaluate personally with the daughter the two versions of her prior testimony. The evidence available in Wyoming was relevant and substantial with respect to the issue of the best interest of the child. Under these criteria the Wyoming court properly exercised jurisdiction in the matter and entered its decree modifying the custody provisions of the Texas decree.

The third issue presented by the father is his argument that he entered and maintained in the district court in Teton County, Wyoming, a special appearance to contest both subject-matter jurisdiction and jurisdiction over his person. Pointing to his continuing status as a resident of Texas, he urges that service of process by the sheriff's office in Harris County, Texas, was not sufficient to invest the Wyoming court with the power to enter judgments terminating his visitation privileges indefinitely or for money amounts due for unpaid support payments. This argument also extends to the award in the judgment of attorneys fees and costs of litigation. The father argues that there is no adequate nexus, either in the record or in fact, to justify the exercise of in personam jurisdiction over him. Stated succinctly, his argument is that he entered only a special appearance in Wyoming to contest jurisdiction and he did not waive that appearance by any general appearance in the case.

The district court in an order entered on October 8, 1981, which dealt with various pending motions, made the following finding:

"1. Defendant's continued requests for affirmative relief, most recently in the motions for 'Vacation of Order to Amend and for Default', continue [sic] an abandonment of special appearance and change his status to that of a general appearance."

We affirm the finding of the district court in this regard. In the first pleadings filed in the district court in Wyoming the father invoked the power of the court by seeking as an alternative to dismissal for want of jurisdiction affirmative action by the Wyoming district court either to enforce the earlier Texas judgment or to recognize the Texas court as a more convenient forum. A special appearance is one limited to challenging the jurisdiction of the court. By invoking the power of the district court to grant affirmative relief, the appellant waived his special appearance and made a general appearance. *Public Service Commission of Wyoming v. Russell,* 51 Wyo. 463, 68 P.2d 597 (1937); *State ex rel. Valles v. Brown,* supra; and *Wagoner v. Saunier,* Okl., 627 P.2d 428 (1981). In addition to the matters mentioned, the appellant, as alluded to by the district court in its finding, subsequently filed a motion in which he sought vacation of the district court's allowance of the mother's motion to amend and in which he requested the entry of a default judgment against himself so that he could promptly appeal. Furthermore, this court is cognizant of the fact that in July of 1981 the father sought affirmative relief in Wyoming courts by the filing of a Petition for Writ of Habeas Corpus and Writ of Prohibition in this court.

The father is not assisted by his later Notice of Non-participation because once a person subjects himself to the jurisdiction of the court by the entry of a general appearance, he cannot withdraw his earlier appearance and escape the jurisdiction of the court. *Weaver Construction Company v. District Court in and for El Paso County, 4th Judicial District,* 190 Colo. 227, 545 P.2d 1042 (1976). We hold that the district court properly exercised personal jurisdiction over the father.

Finally, although embellished with the claim of a deprivation of due process of law, the last argument of the father relates to the sufficiency of the evidence to justify the finding by the district court of a substantial change in circumstances. The father argues that this record does not contain evidence to support the decision of the district court, and because of the district court's order that the hearing held on February 11, 1982, not be reported, this court

cannot identify evidence sufficient to support the district court's decision. He also urges the proposition that the brief period between the date of the modification order in Texas and the beginning of the Wyoming proceedings negates the possibility that a change of circumstances occurred in the interim.

■ Once vested with jurisdiction over the cause, it is the duty of the court to hear evidence to determine whether a substantial material change in circumstances has occurred so that the welfare of the child will be best served by a change in custody. *Blackwell v. Pickett,* Wyo., 490 P.2d 347 (1971); *Elm v. Key,* Wyo., 480 P.2d 104 (1971); *Leitner v. Lonabaugh,* supra; and *Linch v. Harden,* supra. Although the brief period of time between the entry of the order sought to be modified and the institution of new proceedings may indicate that circumstances have not changed, we cannot as a matter of law hold that the movant, who bears the burden of proof, could not present such sufficient evidence. *Blackwell v. Pickett,* supra; *Tanner v. Tanner,* supra; and *Laughton v. Laughton,* 71 Wyo. 506, 259 P.2d 1093, 43 A.L.R.2d 351 (1953). We note, in this regard, that although the Texas court had restored custody to the mother in August of 1981, its order was not entered until some five months later. The record persuades us that many events were occurring after the restoration of custody to the mother, some of which the Texas court took into account, but some of which the district court in Wyoming reasonably would be required to entertain in considering a change in circumstances.

■ We are not persuaded that the trial court committed an abuse of its discretion in entering the order appealed from after the unreported hearing. This is not a case in which the record is devoid of any evidence or findings by the trial court such as *McVay v. McVay,* 44 Ohio App.2d 370, 73 Ohio Op.2d 415, 338 N.E.2d 772 (1974), which is relied upon by the father. The district court in this instance made detailed and explicit findings concerning the changes in the daughter's circumstances.

In addition, the record contains exhibits entered into the record at the unreported hearing which themselves contain evidence, including the depositions of the daughter and the psychologist, both of which support the findings made by the district court. The evidence is sufficient to support a conclusion that the mother has established a stable home with her new husband, and this has greatly aided the daughter's own emotional stability and maturity. The deposition of the psychologist details the advances the daughter has made since treatment was obtained. The daughter is happy and manifesting significant improvement in her school work and social development under the mother's care and supervision. She has established a strong parent-child relationship with her stepfather. Other improvements in the daughter and the mother's circumstances are detailed in the record. The record in this case is adequate to support the action of the district court.

It does appear that the father's position fails to take into account the prior decisions of this court with respect to modification orders in child-custody proceedings. It is our rule that the decision of the district court will not be disturbed on appeal unless there is an abuse of discretion or the violation of some legal principle. *Gill v. Gill,* Wyo., 363 P.2d 86 (1961); and *Stirrett v. Stirrett,* 35 Wyo. 206, 248 P. 1 (1926). Since we conclude that there is present here neither an abuse of discretion nor the violation of any legal principle, the judgment of the district court must be sustained.

The order of the trial court hereby is affirmed on the basis of the conclusions reached in the foregoing opinion.

APPENDIX A

PARENTAL KIDNAPING PREVENTION ACT OF 1980

PUB.L. 96–611, 94 STAT. 3569, AS CODIFIED IN 28 U.S.C.A. § 1738A

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently

with the provisions of this section by a court of another State.

"(b) As used in this section, the term—

"(1) 'child' means a person under the age of eighteen;

"(2) 'contestant' means a person, including a parent, who claims a right to custody or visitation of a child;

"(3) 'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;

"(4) 'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

"(5) 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

"(6) 'person acting as a parent' means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

"(7) 'physical custody' means actual possession and control of a child; and

"(8) 'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

"(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

"(e) Before a child custody determination is made, reasonable notice and opportuni-

ty to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

NOTE: Legal scholars had anticipated the desirability of legislation such as this. See Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.Rev. 1207, 1209–1216 (1969); Currie, Full Faith and Credit, Chiefly to Judgments: A Role for Congress, 1964 Sup.Ct. Rev. 89, 115–118; Moran, The Uniform Child Custody Jurisdiction Act: An Analysis of Its History, A Prediction of Its Future, 84 W.Va.L.Rev. 135, 138–141 (1981); Ratner, Child Custody in a Federal System, 62 Mich.L.Rev. 795, 798–807 (1965).