Rita Kay **WYMAN**, Plaintiff,

v.

John Frederick **LARNER**, Defendant.

No. IP 85–108–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 3, 1985.

John P. Tobin, Indianapolis, Ind., for plaintiff.

John Frederick Larner, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARKER, District Judge.

This lawsuit arises out of a continuing custody battle between the plaintiff, Rita Kay Wyman ("Wyman"), and the defendant, John Frederick Larner ("Larner"), parents of Leah Renee Wyman ("Leah"). Since Leah's birth in December, 1981, the custody issue has been litigated in both Indiana and Colorado state courts by Wyman and Larner, respectively. The end result of this litigation is conflicting custody decrees. Colorado awarded custody to Larner while Indiana awarded custody to Wyman.

In order to obtain resolution of these inconsistent decrees, Wyman filed the present suit on January 24, 1985, alleging jurisdiction under the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. On January 29, 1985, this Court *sua sponte* dismissed the complaint for lack of jurisdiction and denied plaintiff's motion to stay the Colorado state court custody proceedings. Wyman immediately filed a motion to reconsider, citing *Flood v. Braaten*, 727 F.2d 303, 310 (3d Cir.1984), and *Heartfield v. Heartfield*, 749 F.2d 1138, 11 Family Law Rptr. 1145 (5th Cir.1985), as authority for her contention that the Court had jurisdiction under the PKPA to determine which state court decree should prevail. The Court, on consideration of those recent decisions, on February 26, 1985, reinstated Wyman's case and stayed the Colorado state court proceedings. On the same day

that Wyman's complaint was *sua sponte* dismissed, Larner filed an identical suit in the United States District Court for the District of Colorado.

Presently, the Court is faced with various motions by Larner and one by Wyman. Larner's motions include: 1) consolidation of this action with the Colorado Federal District Court proceeding by deferring to the Colorado court; 2) stay of all further proceedings in any state court and that the Court vacate the Colorado state court stay, or, to vacate the stay and consolidate the Federal District Court actions by deferring to the Colorado District Court, and 3) for an enlargement of time of fifteen (15) days after all motions are decided in which to answer Wyman's complaint. On March 21, 1985, Larner filed an answer and counterclaim to Wyman's complaint. In his answer, Larner alleges that the complaint fails to state a claim upon which relief may be granted, both generally and under 28 U.S.C. § 1738A, that the complaint is insufficiently verified, that Wyman has not alleged inadequate Colorado state court remedy, and that the Indiana Supreme Court's decision in *State, ex rel. Larner v. Martin Circuit Court*, 456 N.E.2d 395 (Ind.1983), *reh'g denied, Id., cert. denied,* —— U.S. ——, 105 S.Ct. 138, 83 L.Ed.2d 78 (1984), was erroneous. Larner's counterclaim, in essence, reiterates the procedural history of all prior custody litigation, and alleges that the Marion Circuit Court of Indiana and the Indiana Supreme Court have violated 28 U.S.C. § 1738A by refusing to enforce the Colorado state court custody decree. In his counterclaim, Larner seeks: 1) deferral to the United States District Court, District of Colorado; 2) or, in the alternative, for summary judgment; 3) enforcement of the custody order of the Colorado state court; and 4) payment of all attorney fees, costs, and travel expenses incurred in the "defense of various lawsuits." On April 2, 1985, Wyman moved to dismiss the counterclaim for failure to state a claim on which relief may be granted.

Based on the briefs and pleadings submitted by both parties, the Court, being duly advised in the premises, now submits its Findings of Fact and Conclusions of Law. In accordance therewith, the Court DENIES the defendant's Motion for Summary Judgment and *sua sponte* GRANTS summary judgment to the plaintiff.

### Findings of Fact

1. Leah Renee Wyman was born on December 6, 1981, in Indianapolis, Indiana.

2. Wyman and Larner are the parents of Leah Renee Wyman.

3. Since the time of her birth in 1981, Leah Renee Wyman has resided with her mother in the State of Indiana and has never left the state.

4. John Frederick Larner resides in Steamboat Springs, Colorado.

5. On February 25, 1983, the Marion Superior Court No. 5 of Indiana granted custody of Leah Renee Wyman to Wyman.

6. On April 18, 1983, the Routt County District Court of Colorado granted custody of Leah Renee Wyman to Larner.

7. Any finding of fact stated above, to the extent that it constitutes a conclusion of law, is herein incorporated by reference as an additional conclusion of law by the Court.

### Conclusions of Law

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1738A because there are two inconsistent state court custody decrees.

2. Under 28 U.S.C. § 1738A, the state courts of a child's "home state" have jurisdiction to determine which parent is entitled to custody of the child.

3. Title 28 U.S.C. § 1738A defines "home state" as that state where, immediately preceding the home involved, the child lived with her parent(s) for at least six (6) consecutive months. In a case where the child is less than six months old, the home state is the state in which the child lived from birth with any of her parent(s).

4. Leah Renee Wyman was less than six (6) months old when the child custody proceedings were begun; thus, the home state is the state in which she lived from birth. Because Leah Renee Wyman has lived in Indiana since her birth, the Court finds that Indiana is her home state within the meaning of 28 U.S.C. § 1738A.

5. Because Indiana is the home state of Leah Renee Wyman, the courts of Indiana have jurisdiction to 28 U.S.C. § 1738A to determine which parent is entitled to custody of Leah Renee Wyman.

6. Further, because all evidence relevant to a determination of the best interests of Leah Renee Wyman is located in Indiana, the courts of Indiana are most properly situated to determine which parent is entitled to custody of Leah Renee Wyman.

7. The undisputed facts presented clearly support the determination that Indiana is Leah Renee Wyman's home state, and summary judgment shall be entered for the plaintiff, Rita Kay Wyman, on her complaint.

8. In his counterclaim, Larner is seeking an enforcement of the Colorado state court's custody order, a determination that the Indiana court issued a custody decree in violation of his rights protected by 28 U.S.C. § 1738A, and a dismissal of Wyman's complaint now before this Court. Because these issues are nearly identical to those presented in the complaint, in that it calls for a decision as to which state court has proper authority to issue a child custody order, the Court finds that the above rulings on Wyman's complaint are also dispositive of the issues presented by Larner's counterclaim. Accordingly, Larner's counterclaim is hereby DISMISSED.

9. Any conclusion of law stated above, to the extent that it constitutes a finding of fact, is herein incorporated by reference as an additional finding of fact by the Court.

### Memorandum

#### I. Larner's Motion for Summary Judgment

The standards governing a motion for summary judgment are well-established. Summary judgment is not to be granted unless the Court finds from the pleadings and the evidence that no genuine issue as to any material fact exists. Fed.R.Civ.P. 56(c) (1985). The nonmoving party's reasonable allegations are to be accepted as true. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir.1984). Furthermore, inferences drawn from underlying facts contained in pleadings and other documents must be viewed in the light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). If any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment, and the motion for summary judgment must be denied. *Yorger*, 733 F.2d at 1218; *Moutoux v. Gulling Auto Electric*, 295 F.2d 573, 576 (7th Cir.1961).

Larner claims that he is entitled to summary judgment. In order to determine whether a genuine issue of material fact exists in the present case, it is necessary to understand the provisions of the PKRA, and to apply them to the facts presented.

#### II. The PKPA

Federal courts have jurisdiction under the PKPA, 28 U.S.C. § 1738A, to determine which of two inconsistent state court custody decrees is valid. *Heartfield v. Heartfield*, 749 F.2d 1138, 11 Fam.L.Rptr. 1145 (5th Cir.1985); *DiRuggiero v. Rodgers*, 743 F.2d 1009 (3d Cir.1984); *Flood v. Braaten*, 727 F.2d 303 (3d Cir.1984). To invoke the PKPA, a plaintiff must allege injury resulting from two inconsistent state court custody decrees. The plaintiff must also allege that one decree was rendered in violation of the PKPA. Although the federal courts have declined to decide whether a plaintiff must exhaust all state court remedies prior to seeking relief in federal court, inconsistent decrees have been held to constitute a sufficient basis to invoke federal jurisdiction. *DiRuggiero*, 743 F.2d

at 1015. *See also Flood,* 727 F.2d at 312, n. 28. Because both Indiana and Colorado state courts have rendered inconsistent custody decrees in the case at bar, this Court has jurisdiction under the PKRA to address the issues presented.

■ Once jurisdiction is established, federal courts face the narrow issue of determining which state court exercised jurisdiction in violation of the PKPA. *Flood,* 727 F.2d at 310. This determination "requires only preliminary inquiry into jurisdictional facts." *Id.* Furthermore, the statute precisely defines the standards by which to identify the state that erroneously ruled on the custody issue. "Pursuant to 28 U.S.C. § 1738A(c), a custody determination is consistent with the provisions of the PKPA only if the court making the determination has jurisdiction under the law of such state and one of five [statutory] conditions is met." *Virginia E.E. v. Alberto S.P.,* 440 N.Y.S.2d 979, 983, 110 Misc.2d 448 (N.Y. Fam.Ct.1981). Of the five statutory conditions, the one relevant to the present dispute states:[1]

"(A) Such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State[.]"

28 U.S.C. § 1738A(c)(2)(A). According to this condition, a court located in the child's "home state" has jurisdiction to enter a custody decree. 28 U.S.C. § 1738A(c)(2)(A). The statute defines home state as:

"the state in which, immediately preceding the home involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old, the state in

which the child lived from birth with any of such persons."

28 U.S.C. § 1738A(b)(4).

Reading condition A together with the definition of "home state," the Court finds that Indiana is the only state to qualify as Leah's home state. When Larner filed suit in April, 1982, Leah was four months old. The statute requires that the child's home state be determined in relation to the time of the commencement of custody proceedings. Because Leah was less than six months old at that time, section (b)(4) of the statute defines Leah's home state as the state where she lived from birth. 28 U.S.C. § 1738A(b)(4). On the face of the statute, therefore, Indiana is Leah's home state.

■ Larner contends that because Leah was conceived and carried for several months in Colorado, Colorado is the child's home state. However, Congress specifically provided for situations such as this one in section (b)(4) of the statute where it states that for children less than six months of age, the home state is the state where the child resided from birth. 28 U.S.C. § 1738A(b)(4). Because Congress has specifically limited the time frame for determining the child's home state to those months after birth, the courts will adhere to those limitations.

Looking beyond the statute, the case law interpreting the PKPA supports this Court's finding that Indiana is Leah's home state. In *Quenzer v. Quenzer,* 653 P.2d 295 (Wyo.1982), the father appealed a grant of custody to his former wife. The Supreme Court of Wyoming determined that because the child lived in Wyoming for more than six months prior to the commencement of custody proceedings, Wyoming was the child's home state. Therefore, the Court ruled that the Wyoming lower court decree prevailed over the inconsistent Texas court decree. The court further noted that the child had a significant connection with the State of Wyoming. That is, all of the evidence relevant to

---

1. Conditions B through E, which deal with abandoned or abused children, and situations where no state would have jurisdiction under condition A, do not apply to the present dispute. *See* 28 U.S.C. § 1738A(c)(2)(B–E).

determining the child's best interest was located in Wyoming. The court identified the relevant evidence as information concerning the child's personal relationships, present or future. training, protection and care, friends, neighbors, and school personnel.

Similarly, in *Ex parte Lee*, 445 So.2d 287 (Ala.Ct.Civ.App.1983), the court addressed the issue of whether Texas was the child's home state. The child was born in Texas and lived there for precisely six months. Thereafter, the child was removed to Alabama by his mother. Six days later, the father instituted custody proceedings in Texas. Because the child had lived in Texas for the first six months of his life, the Alabama court enforced the Texas custody decree. Noting the unambiguous provisions of the PKPA, the court stated, "[s]uch a determination is inescapable under the federal act." *Id.* at 290. *See also Mitchell v. Mitchell*, 437 So.2d 122 (Ala. Civ.App.1982) (The home state of a child who is less than six months of age when custody proceedings are initiated is the state in which the child lived from birth).

The case law clearly supports this Court's finding that Indiana is Leah's home state. Leah was born in Indiana and has continuously lived in the state since her birth. Moreover, Leah has never been to the State of Colorado. As in *Quenzer*, all of the evidence relevant to determining Leah's best interest is located in Indiana. As in *Mitchell*, the home state of Leah, who was less than six months old when custody proceedings were initiated, is the state in which she lived from birth. And, most importantly, as the court in *Lee* noted, the language of the PKPA is unequivocal. To paraphrase that court, the determination that Indiana is Leah's home state is inescapable under the Federal Act.

▮ Larner asserts that Wyman is not entitled to a federal court adjudication of the custody issue because she has not exhausted Colorado state court remedies. As noted previously, the federal courts have not formally decided whether a plaintiff must exhaust all state court proceedings prior to seeking federal relief. *See, e.g.,*

*DiRuggiero*, 743 F.2d at 1015; *Flood*, 727 F.2d at 312, n. 28. However, the Third Circuit Court of Appeals has twice addressed the exhaustion issue and, without ruling on it, held that inconsistent custody decrees are sufficient to invoke the PKPA. *DiRuggerio*, 743 F.2d at 1015; *Flood*, 727 F.2d at 312, n. 28. In *DiRuggerio*, for example, the court noted that both New Jersey and North Carolina courts had rendered inconsistent custody decrees. "Because the intent of the PKPA is to avoid the multiple exercise of jurisdiction over custody," the court stated, "one of these awards is inconsistent with the PKPA." *DiRuggerio*, 743 F.2d at 1015. Because the inconsistent decrees were adequate to invoke the district court's subject matter jurisdiction, the court did not decide the exhaustion issue. *Id.* The case at bar is analogous to *Flood* and *DiRuggerio* in that two state courts have rendered inconsistent custody decrees. Because the PKPA is designed to prevent the concurrent exercise of jurisdiction by two state courts, Wyman has a sufficient basis to invoke the statute.

Both the PKPA and the case law support the finding that Indiana is Leah's home state. Therefore, no genuine issue of material fact exists. Accordingly, the Court DENIES Larner's Motion for Summary Judgment and *sua sponte* GRANTS summary judgment to Wyman.