This is a child custody jurisdiction case arising under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (Supp. 1982), and the Uniform Child Custody *Page 1036 
Jurisdiction Act, Ala. Code §§ 30-3-20 to -44 (Cum.Supp. 1981).
The instant appeal involves a minor child who has been the subject of custody proceedings in three jurisdictions, culminating with the Circuit Court of Crenshaw County modifying all prior decrees and awarding custody to the father.
The mother, through able counsel who has favored this court with an excellent brief and oral presentation, appeals, contending I.) that Alabama did not have jurisdiction to modify custody, and II.) that the trial court abused its discretion in modifying custody. We disagree with the mother's contentions and affirm.
 I.
A review of the facts relative to jurisdiction reveals the following:
The parties' minor son was born in the summer of 1976, and the parties were married six months later. The mother and father separated only a few months after they were married. The father admits he is the natural father of the minor child, although there has been no formal legitimation procedure.
The child's paternal grandparents live in Luverne. Shortly after the mother and father separated, the mother sent the child to live with the paternal grandparents. In 1979, after the child had been with the grandparents for several months, the mother requested that the child be given back to her. The grandparents and father refused, whereupon the mother petitioned the Circuit Court of Crenshaw County, Alabama, for a writ of habeas corpus.
At the conclusion of a hearing on the matter, the trial court in Alabama determined that it would treat the proceedings as a contest of the rights of the mother, father, and grandmother for the custody of the minor child. There was no objection to this treatment. On October 15, 1979, the trial court entered an order awarding custody to the mother.
The mother then took the child with her to Michigan where the mother was stationed in the Air Force. The child remained with the mother in Michigan from October, 1979, to March, 1980. The child lived with the paternal grandparents in Alabama in March and April of 1980.
The mother filed for divorce in Michigan. The father was personally served but failed to appear. On April 10, 1980, the Michigan trial court entered a judgment of divorce by default. The Michigan decree awarded custody of the minor child to the mother. During this period, as indicated, the child was apparently in Alabama. After the divorce, the child returned to Michigan to live with the mother.
In September, 1980, the mother sent the child back to Alabama to live with the paternal grandparents. When the mother came to Alabama on Christmas leave, she picked up the child and took him to Mississippi. The child's maternal aunt and uncle live in Starkville, Mississippi. The mother returned to Michigan. The child lived with the aunt and uncle in Mississippi from January, 1981, to November, 1981. In October, 1981, the aunt and uncle initiated guardianship proceedings in a Mississippi court.
The child accompanied the aunt and uncle to Georgia for a visit during the Thanksgiving holidays in 1981. The father and grandparents went to Georgia, picked up the child, and brought him back to Alabama without the permission of the mother or the maternal aunt and uncle.
The mother, aunt and uncle immediately filed a motion in the Circuit Court of Crenshaw County requesting that the trial court enforce the existing custody decree.
Attached to the mother's motion were copies of the 1979 Alabama custody order and the 1980 Michigan divorce decree. The father then cross-petitioned for custody of the minor child. The mother moved to dismiss the cross-petition, alleging that Alabama did not have jurisdiction to order a modification of custody.
The trial court held an expeditious hearing. Counsel for the parties first argued at length on the jurisdictional issue. The trial court reserved its ruling on the question of jurisdiction until evidence on all the issues *Page 1037 
involved in the custody dispute had been presented.
After the hearing, the trial court entered its order on December 23, 1981. The trial court first determined that it had jurisdiction. The trial court then modified any prior custody orders and awarded custody of the minor child to the father. The mother and the maternal aunt and uncle were granted visitation privileges.
The initial question before this court is whether Alabama had jurisdiction to enter an order modifying custody of the minor child.
Interstate custody disputes are governed by the recently enacted federal statute, the Parental Kidnapping Prevention Act of 1980. 28 U.S.C. § 1738A (PKPA)[1]. The PKPA is very similar to the Alabama version of the Uniform Child Custody *Page 1038 
Jurisdiction Act (UCCJA). Because the federal statute, the PKPA, preempts the state law, the UCCJA, in areas where the statutes conflict, questions of jurisdiction arising in interstate child custody matters must now be decided by reference to the PKPA. U.S. Const. art. 6, cl. 2.
In order for Alabama to have properly exercised jurisdiction in the December, 1981, modification proceeding, Alabama must have had continuing jurisdiction. § 1738A (d). Continuing jurisdiction exists when the initial custody order was rendered in compliance with the PKPA and the child or any contestant continues to reside in the state. Id.
The father has remained in Alabama since the rendition of the 1979 order. Therefore, since the initial decree complied with the PKPA and one contestant has continued to reside in this state, Alabama had continuing jurisdiction in December, 1981. § 1738A (d). See Bloodgood v. Whigham, 408 So.2d 122
(Ala.Civ.App. 1981).
A state which has continuing jurisdiction may properly exercise that jurisdiction in order to make a custody determination. § 1738A (c)(2)(E). Alabama properly exercised its continuing jurisdiction in December, 1981, in order to determine whether custody should be modified.
Alabama's continuing jurisdiction was not affected by the custody determination made by the Michigan court in the 1980 divorce decree. The custody provisions of the Michigan decree did not comply with the PKPA and thus Alabama was not required to extend full faith and credit to the Michigan custody order. § 1738A (a).
When the Michigan court issued its default judgment of divorce in April, 1980, Michigan was not the child's home state nor had it been the child's home state six months prior to the commencement of the divorce proceeding. § 1738A (c)(2)(A). Alabama still retained home state jurisdiction in April, 1980; thus Alabama's home state jurisdiction precluded Michigan from entering a custody order. § 1738A (c)(2)(B). Michigan did not meet any other criteria for jurisdiction contained in the statute. § 1738A (c)(2)(C), (D), (E). Because the 1980 Michigan custody determination was not made in compliance with the PKPA, the Michigan custody order is not entitled to full faith and credit.
We further note that Alabama properly exercised its continuing jurisdiction in December, 1981, even though guardianship proceedings were currently pending before a Mississippi court.
Regardless of what Mississippi's status might be, Mississippi could not modify the 1979 Alabama custody order because Alabama had continuing jurisdiction which it had never declined to exercise. § 1738A (f)(2). In sum, under the instant facts, the PKPA mandates that Alabama was the only state which could modify a prior custody order.
We must next consider whether Alabama should have declined to exercise jurisdiction in December, 1981, due to the father's act of bringing the child into this state without the mother's consent. One of the general purposes of the PKPA is to "deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards." Pub.L. 96-611, § 7 (c)(6), 94 Stat. 3566 (1980). The PKPA, though, under the instant circumstances, does not expressly require a state to refrain from exercising jurisdiction in interstate custody disputes involving "child-snatching."
Since the federal law is silent on this issue, we must turn to Alabama's own statute. *Page 1039 
The pertinent provision of Alabama's version of the UCCJA is found at Alabama Code Section 30-3-28 (Cum.Supp. 1981):
 (a) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
 (b) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances. . . .
While this court does not condone the father's conduct, we cannot find that the above referenced statute required Alabama to decline to exercise jurisdiction. The father did not take the child from the custodial parent. Rather, the child was taken from the maternal aunt and uncle who had no legal custodial right to the child.
Additionally, this is not an instance where the child was brought into a new state which had never before exercised jurisdiction over this child. Instead, the father brought the child into a state which had continuing jurisdiction over the child's custody by virtue of the 1979 decree. On these facts, we cannot find that Alabama should have declined jurisdiction and refused to entertain the father's cross-petition for modification.
We conclude that Alabama properly exercised jurisdiction pursuant to the pertinent provisions of the PKPA and the UCCJA. The trial court had jurisdiction to determine whether the 1979 custody order should be modified.
 II
The mother contends on appeal that the trial court abused its discretion in ordering that custody be modified and awarding the father custody of the child. We disagree.
The parent seeking modification must show a material change in circumstances which affects the best interests of the child.Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). The trial court's judgment, rendered after an ore tenus hearing, will not be disturbed on appeal unless the judgment is plainly and palpably wrong. Barber v. Lay, 384 So.2d 1095 (Ala.Civ.App.),cert. denied, 384 So.2d 1096 (Ala. 1980).
We have reviewed the record with the attendant presumption and find the facts support the trial court's determination that there had been a material change in circumstances warranting a change in custody. The child has lived with the mother no more than ten months in the two years since the issuance of the 1979 decree. The grandparents kept the child for several months in 1980. Then, in 1981, the mother totally relinquished the child to the care of the maternal aunt and uncle.
The father, meanwhile, has become gainfully employed since the initial custody decree. The father lives near the grandparents, and several witnesses testified as to the father's character and fitness over the past two years.
We note the paternal grandparents and the maternal aunt and uncle testified at the hearing. The record reflects that these four people are all of outstanding character. They genuinely love the minor child and want it to have a stable, caring home. However, while the concern of other family members is not to be lightly discounted, the trial court in this action had to determine which parent, rather than which family, would serve the best interests of the child.
In light of the above, we find the trial court did not abuse its discretion in finding there had been so material a change in circumstances that it would be in the best interests of the child to modify the award and give custody to the father. *Page 1040 
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] (a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
(b) As used in this section, the term —
(1) "child" means a person under the age of eighteen;
 (2) "contestant" means a person, including a parent, who claims a right to custody or visitation of a child;
 (3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;
 (4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;
 (5) "modification" and "modify" refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;
 (6) "person acting as a parent" means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;
 (7) "physical custody" means actual possession and control of a child; and
 (8) "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if —
 (1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
 (A) Such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
 (B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training and personal relationships;
 (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
 (D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
 (E) The court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
 (1) it has jurisdiction to make such a child custody determination; and
 (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.