This appeal is from a decree dismissing a child custody modification petition.
A final decree of divorce was rendered by the Circuit Court of Jefferson County, Alabama on September 8, 1982, dissolving the bonds of matrimony between the parties. During the marriage they had one child. An agreement pertaining to child custody, child support, distribution of personal property, medical insurance for the child, and visitation rights with the child by the father was incorporated into the decree. A joint petition to modify the decree to transfer custody of the child from the mother to the father, subject to the mother's right of reasonable visitation, was granted on January 18, 1983.
On October 14, 1983 the mother filed a petition for modification, seeking to regain custody of the child. Upon motion by her, the petition to modify was dismissed on November 30, 1983.
In the Probate Court of Cobb County, Georgia, on June 25, 1984, a paternal aunt of the child filed a "Petition for Letters of Guardianship for a Child Under the Age of Fourteen Years." At this time the child had been in the physical custody of the aunt for about two years. Prior to the date of the filing of the petition for guardianship, the father and mother, as the child's natural parents, signed a statement relinquishing their parental authority and custody in the child. *Page 636 
On August 3, 1984 the mother filed a caveat in the Georgia court seeking to rescind her relinquishment of paternal rights and custody as previously signed. This caveat also stated that at that time she was filing a petition to modify custody in the Circuit Court of Jefferson County, Alabama. On August 23, 1984 the mother did file a petition to modify, seeking custody of the child in the Alabama court.
Meanwhile, on August 6, 1984 the Georgia court, being apprised of the mother's caveat, continued the case. On September 6, 1984 a hearing was held before the Georgia court. At this hearing both parties were present and represented by counsel. Subsequently, the court held that it had jurisdiction of the matter, that the natural parents had validly executed a voluntary relinquishment of parental authority and custody, that the evidence showed that both parents had in fact relinquished parental authority and custody to the child's aunt for a period of about two years, and that the aunt should be the guardian of the child, with certain visitation rights accorded to the mother.
On December 4, 1984 the father filed a motion in the Alabama court to dismiss the mother's petition to modify. Thereafter, on May 13, 1985, the Alabama court dismissed the modification petition on the ground that the matter had been previously resolved by the September 6, 1984 order of the Georgia court.
On appeal the mother contends that the Alabama court erred to reversal in dismissing her petition to modify based upon the Georgia order. She argues that the proceeding in Georgia was a guardianship proceeding, not a custody proceeding, and thus did not bring into operation the Parental Kidnapping Prevention Act of 1980 (PKPA) or the Uniform Child Custody Jurisdiction Act (UCCJA) so as to warrant enforcement in the Alabama courts, and that Alabama continues to have jurisdiction of the matter.
In resolving issues of interstate custody disputes, the PKPA is the governing law. Flannery v. Stephenson, 416 So.2d 1034
(Ala.Civ.App. 1982). Additionally, in areas where the PKPA and the UCCJA conflict, the federal act will preempt the state law.Flannery v. Stephenson, supra.
Under the PKPA the state which rendered the initial custody order would have continuing jurisdiction if the order was rendered in compliance with the act, and the child or one of the contestants continues to reside in the state. Moore v.Perez, 428 So.2d 113 (Ala.Civ.App. 1983). The divorce decree was rendered in Alabama in compliance with the PKPA, and the parties continue to live in Alabama. Thus, Alabama did have jurisdiction at the time of the proceeding in Georgia. However, the state which has continuing jurisdiction may decline to exercise such jurisdiction should it appear that another state is a more appropriate forum. 28 U.S.C.A. § 1738A (West Suppl. 1985).
The PKPA also authorizes a court of a state to modify a sister state's custody determination (1) if the state has the jurisdiction to make a child custody determination, and (2) if the sister state no longer has jurisdiction or declines to exercise jurisdiction. 28 U.S.C.A. § 1738A (f) (West Suppl. 1985).
The record reflects that the natural parents executed a written instrument relinquishing all rights of custody to the child to the paternal aunt, and further consented for the Georgia Probate Court to appoint the aunt as the guardian of the child. Although the mother later filed a caveat seeking to have her relinquishment of custody voided, the probate court, after a hearing at which the mother was present and represented by counsel, refused the caveat and found that the natural parents had voluntarily relinquished parental authority and custody in the child, and appointed the aunt as the child's guardian.
According to Georgia law, "[t]he power of a guardian over the person of his ward shall be the same as that of the parent over his child, the guardian standing in place of the parent." Official Code of Georgia Annotated (OCGA) § 29-2-1 (1982). In other *Page 637 
words, the guardian of a minor child in Georgia has the same claim to custody as a parent would have. Beavers v. Williams,194 Ga. 875, 23 S.E.2d 171 (1942).
The Georgia guardianship proceeding, therefore, was a custody determination within the meaning of section 30-3-22 (2), Code 1975 and 28 U.S.C.A. § 1738A (b)(3) (West Suppl. 1985).
The record also shows that the child had been in Georgia for about two years prior to the commencement of the proceedings in Georgia. Consequently, Georgia was the "home state" of the child within the meaning of the PKPA. See, 28 U.S.C.A. § 1738A
(c)(2)(A) (West Suppl. 1985).
Since the natural parents voluntarily submitted themselves to the Georgia court and Georgia was the child's "home state" within the meaning of the PKPA, we conclude that the Georgia court, as well as the Alabama court, had jurisdiction to render a decree relating to the custody of the parties' child. Thus, because Georgia did have jurisdiction to decide the custody of the child and did so decide it, the Alabama court considered the Georgia court the more appropriate forum and properly declined to exercise jurisdiction over the mother's petition to modify. See, Moore v. Perez, supra.
The mother also argues that the Georgia court lacked the authority to render its September 18, 1984 order because she had previously filed a petition to modify the custody decree in Alabama on August 23, 1984. To support her contention, she relies upon a provision of the PKPA which provides:
 "A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."
28 U.S.C.A. § 1738A (g) (West Supp. 1985).
In this case we construe that provision to mean that Alabama was required to refrain from action on the mother's modification petition until after the Georgia court had rendered an order because the Georgia court's jurisdiction had been invoked before the proceeding had been filed in Alabama.Ex parte Lee, 445 So.2d 287 (Ala.Civ.App. 1983). The Alabama court did in fact follow that mandate, and thus, once the Georgia order was rendered, the Alabama court properly dismissed the mother's petition.
AFFIRMED.
HOLMES, J., concurs.
WRIGHT, P.J., concurs in the result.