[No. 18481–4–I.  Division One.  January 12, 1987.]

*In the Matter of* SHILOH ABRAHAM THORENSEN.

494

*Howard R. Bartlett* and *Taylor, Kiefer & Bartlett,* for petitioner.

*Robert S. Egger,* for respondent.

COLEMAN, J.—Eric Thorensen appeals an order refusing to enforce a Florida custody decree giving him temporary custody of his child and asserting jurisdiction to modify a Florida custody decree. We affirm.

Shiloh Abraham Thorensen was born on September 20, 1976, in the state of Florida. He and his parents, Rose Perrino Thorensen (Perrino) and Eric Thorensen (Thorensen) resided in Pinellas County, Florida. On June 14, 1978, Perrino filed for divorce in Florida. The petition was followed

by 2 years of custody litigation and charges and counter charges of harassment in the state of Florida.

In December 1979, an order was entered giving Perrino permanent custody of Shiloh but requiring court consent to remove him from the state.

From April 1979 through April 1980, several police reports were made stating allegations by one party or the other of harassing phone calls, threats, and violations of visitation rights. On March 18, 1980, Perrino filed a motion for contempt and for modification of the visitation provisions of the custody order. Thorensen also filed a motion for contempt. A hearing was held on April 16, 1980, and an oral order rendered. On April 30, 1980, the court issued a written order that modified the custody decree by changing visitation and ordered that the motion for contempt be taken under advisement.

Some time after the hearing and before the written order was filed on April 30, Perrino took Shiloh and fled to Illinois. Thorensen attempted to find her; unable to do so, he filed a motion for modification seeking an award of custody on May 8, 1980. On June 23, 1980, the Florida court refused to grant custody to Thorensen but transferred custody of Shiloh to the Florida Department of Health and Rehabilitative Services (HRS). Pick–up orders were issued.

Thorensen continued to search for Perrino and Shiloh and in 1985, found them in Seattle, Washington. On February 6, 1986, the pick–up order was amended to authorize the Seattle police to take Shiloh into custody. Because HRS was unable to enforce the pick–up order, Thorensen filed a petition for temporary custody in the Florida court. The petition was granted on February 27, 1986. Without notice to Perrino, the petition was filed and heard, and the order was issued. In an attempt to enforce the Florida order, Thorensen filed a petition for writ of habeas corpus in King County Superior Court on March 4, 1986. The family law commissioner entered an order that gave Thorensen physical custody of Shiloh but stayed the portion of the order allowing Thorensen to return Shiloh to Florida for 1 day to

enable Perrino to petition the superior court for revision. On March 6, a hearing was held on the petition for revision. The court held an in camera meeting with Shiloh, spoke on the telephone with the trial judge who issued the February 27 order in Florida, and entered an order vacating the commissioner's ruling of March 5, 1986. The court sent a letter to the Florida court stating that the Washington court would not recognize the February 27, 1986 Florida order because it was invalid since it was entered without notice to Perrino. The letter also requested an investigation into Thorensen by HRS to corroborate or refute Perrino's allegations of abuse. The Washington court stated that it would exercise jurisdiction if Perrino's allegations were substantiated. The Florida court issued an order for an HRS report. That report was completed and submitted to the Washington court on March 26, 1986.

The Washington court entered a temporary order of custody on March 21 returning custody of Shiloh to Perrino. On April 6, 1986, the court rendered an oral opinion stating that it would not honor the February 27, 1986 Florida order, and it would exercise jurisdiction to modify. The court advised the parties to set a trial date on Perrino's modification petition. The Washington court's written order was entered on April 14, 1986.

Meanwhile, on April 1, 1986, Thorensen filed a motion in the Florida court for modification of custody, contempt, and attorney's fees and costs, to be heard on April 16, 1986. The Florida court entered an order on May 2, 1986, denying Thorensen's motion for change of custody without prejudice because of lack of notice to Perrino, continuing his motion for contempt, and stating that it would not yield jurisdiction to Washington.

On June 5, 1986, Thorensen filed a motion in the Washington Court of Appeals for discretionary review of the Washington order. That motion was granted and discretionary review ordered accelerated on July 23, 1986.

On July 18, 1986, Thorensen again filed a petition for modification and contempt charges in Florida. The Florida

court held a hearing on September 18, 1986 and issued a written order on October 31, 1986, granting temporary custody to Thorensen and continuing the contempt proceedings.

Thus, we are faced with conflicting orders in Washington and Florida, each state asserting that it has jurisdiction and refusing to yield to the other. The issues we must resolve in reviewing the actions of the Washington trial court are (1) whether the trial court erred in refusing to enforce the February 27, 1986 Florida order, (2) whether the Washington court was precluded from exercising jurisdiction, (3) if it was not precluded, whether the Washington court had jurisdiction when it acted, and (4) if so, whether it erred by not refusing to exercise its jurisdiction.

Interstate custody jurisdiction disputes are governed by the Parental Kidnapping Prevention Act of 1980 (PKPA)[1] and the Uniform Child Custody Jurisdiction Act (UCCJA).[2] When there are conflicts between the statutes, the PKPA preempts state law under the supremacy clause; therefore, questions of jurisdiction arising in interstate custody matters must first be decided by reference to the PKPA. *Flannery v. Stephenson*, 416 So. 2d 1034, 1038 (Ala. Civ. App. 1982); U.S. Const. art. 6, cl. 2.

The first issue we address is whether the trial court violated the PKPA when it refused to enforce the February 27, 1986 Florida order placing temporary custody in appellant.

■ We apply two rules of statutory construction in this analysis: (1) the statute must be read as a whole; and (2) each subsection of the statute will be read to give effect to the intent of the statute as a whole. *Nisqually Delta Ass'n v. DuPont*, 103 Wn.2d 720, 730, 696 P.2d 1222 (1985). Reading the statute as a whole is especially critical for a

---

[1]28 U.S.C. § 1738A.

[2]This statute has been adopted by Washington, RCW 26.27.010–.910, and Florida, Fla. Stat. § 61.1308–.1316 (1981).

valid interpretation of the PKPA and the UCCJA because various subsections apply only on the assumption that certain other subsections have been satisfied.

Subsection (a) of the PKPA expressly requires enforcement of a sister state order that was made consistently with the provisions of the act and prohibits modification except as provided in subsection (f).

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a). If the order in question was not entered properly and does not have to be enforced under the provisions of the act, one need not reach the provisions of subsection (f). *Quenzer v. Quenzer,* 653 P.2d 295, 299 (Wyo. 1982), *cert. denied,* 460 U.S. 1041, 75 L. Ed. 2d 794, 103 S. Ct. 1436 (1983).[3] Therefore, we must look to subsection (c) of the act to determine if the February 27, 1986 Florida order placing temporary custody in the appellant was made consistently with the provisions of the act.[4]

Subsection (c) states that a child custody determination is consistent with the provision of the act only if (1) the

---

[3]If the order had been made consistently with the statute, we would apply the subsection (f) 2–part test for modification: (1) Washington must have jurisdiction under its own laws to make a custody determination; and (2) Florida must no longer have jurisdiction or must have declined to exercise jurisdiction. Subsection (f) states:

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. 1738A(f).

[4]The statute defines a valid order as one "made consistently with the provisions of this section . . ." 28 U.S.C. § 1738A(a). The word "section" as used in this statute means the whole of § 1738A. When Congress intended to refer to only one provision in the act, the word "subsection" was used.

court has jurisdiction under the law of the state, and (2) one of several conditions is met.[5] Ignoring (c)(1) for the moment, we look to (c)(2) and find that subsections (c)(2)(A) through (D) are not satisfied under the facts of this case.[6] Thus, the only remaining inquiry is whether

---

[5]28 U.S.C. § 1738A(c) provides:

"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

"(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section."

[6]Subsection (c)(2)(A) is a home state requirement. The PKPA defines home state as follows:

(b) As used in this section, the term—

. . .

(4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of

(c)(2)(E) is satisfied, *i.e.,* whether the Florida court has continuing jurisdiction pursuant to subsection (d) of the act.

■ Under subsection (d), the jurisdiction of a court which made a child custody determination consistently with provisions of the act continues as long as the requirements of subsection (c)(1) continue to be met and the state remains the residence of the child or a contestant.

> (d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(d). It is undisputed that Florida remained the residence of one of the contestants, the appellant. The critical factor, however, is whether the child custody determination at issue here (the February 27, 1986 order granting temporary custody to appellant) was made consistently with the provisions of the statute. Throughout the act, there is an emphasis upon making a child custody determination consistently with the provisions of the act.

The February 27, 1986 Florida order was not issued consistently with the provisions of the PKPA. Subsection (e) clearly states that any child custody determination must provide reasonable notice and an opportunity to be heard.

> (e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have

---

such persons are counted as part of the six–month or other period; 28 U.S.C. § 1738A(b)(4).

In February 1986, Florida was not the home state of Shiloh. Florida had not been his home state within 6 months before the date of commencement of the proceeding, not the date on which the proceeding for the initial custody decree commenced, but the date of commencement of the proceeding that resulted in an order that a sister state is being asked to enforce. *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821, 824 (Tenn. 1985). Therefore, (c)(2)(A) is not met. Since Washington is now Shiloh's home state, (c)(2)(B) is not met; under (c)(2)(C), Shiloh was not physically present in Florida in March 1986; and under (c)(2)(D), it is not apparent that no other state would have jurisdiction.

not been previously terminated and any person who has physical custody of a child.

28 U.S.C. § 1738A(e). It is undisputed in the instant case that the location of respondent and Shiloh was known in February 1986, yet the order granting the appellant temporary custody was issued without notice to respondent or an opportunity to be heard. The February 27, 1986 order issued by the State of Florida was a custody determination that was not made consistently with the provisions of the act; therefore, Florida did not have continuing jurisdiction under subsection (d) of the PKPA. The Washington court did not have to enforce the order and was not precluded from modifying the existing custody decree so long as it had jurisdiction.[7]

Having determined that the Washington court was not required to enforce the Florida 1986 custody order and that Florida did not have continuing jurisdiction because its temporary custody determination of February 27, 1986, was not made consistently with the provisions of the PKPA, we now consider whether the Washington court had jurisdic-

---

[7]We adopt the *Quenzer* analysis. There the issue was whether the Wyoming court erred in asserting jurisdiction to modify a Texas custody decree. Having determined that the Texas court did not meet any of the requirements of subsection (c)(2), the *Quenzer* court held that it was unnecessary to look at subsection (f) and concluded that the Wyoming court was not precluded from asserting jurisdiction. *Quenzer*, at 299. The court reasoned: "There is, however, a threshold test which must be applied before the two–part test must be met. The modification order in Texas must have been made consistently with the provisions of the Parental Kidnaping Prevention Act." *Quenzer*, at 299. Thus, the next step in the analysis was to determine if Wyoming had jurisdiction.

[W]e must conclude that the jurisdiction of the district court in Wyoming was not foreclosed by the provisions of the Parental Kidnaping Prevention Act because the modification order entered in the State of Texas was not a "custody determination made consistently with the provisions of this section by a court of another State."

Having concluded that neither the Full Faith and Credit Clause nor the provisions of the Parental Kidnaping Prevention Act foreclosed the exercise of jurisdiction by the district court in Wyoming, we still must consider whether the exercise of that jurisdiction was precluded under some provision of Wyoming law.

*Quenzer*, at 301.

tion to modify. For this part of the analysis we turn to the UCCJA which has been adopted by Washington. The jurisdiction provision of the statute requires:

Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

(2) Except under subsection (1) (c) and (d) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

RCW 26.27.030. In the instant case, the Washington court met the requirements of subsection (1)(a)(i) because Washington was the residence of Shiloh for 6 months prior to the commencement of the proceeding to modify.[8] RCW 26.27-.030(1)(a)(i).

The Washington court also met the requirements of subsection (1)(b)(i) and (ii) that require a significant connection with the State and substantial evidence in the state of the child's present or future care, protection, training, and personal relationships. RCW 26.27.030(1)(b)(i), (ii). Shiloh and his mother had lived in the state of Washington for nearly 2 years. The trial court had school attendance and grade records, as well as a report from the Washington Family Court stating that the environment and relationship was stable and healthy. We hold that the Washington court did have jurisdiction to modify.

We now proceed to the last stage of our analysis and determine whether the trial court erred in refusing to decline jurisdiction.

█ Appellant argues that the trial court's actions contravened the purpose of the act, *i.e.*, to discourage abductions and misconduct. He further asserts that the trial court's decision had the effect of rewarding respondent for abducting her child and violating a custody order. Under RCW 26.27.080, the trial court, according to appellant, should have declined jurisdiction because of respondent's misconduct.

Jurisdiction declined by reason of conduct. . . .
(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly

---

[8]Note the UCCJA defines "home state" in the same language as the PKPA.

"(5) 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six–month or other period;" RCW 26.27.020(5).

removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. *If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.*

(Italics ours.) RCW 26.27.080(2).

This statute mandates refusal to exercise jurisdiction when the noncustodial parent takes the child or retains the child after visitation. That is not the case here. Respondent had legal custody of Shiloh when she left Florida. The statutory provision applicable to the facts of this case is discretionary. The trial court *may* decline jurisdiction in light of the circumstances.

Appellate review of a trial court's findings is limited to determining if the findings are supported by substantial evidence, and if they are, whether the findings support the conclusions of law. *Holland v. Boeing Co.,* 90 Wn.2d 384, 390, 583 P.2d 621 (1978). Substantial evidence is a sufficient quantum to persuade a fair-minded person of the truth of the assertion. *Holland,* at 391. The Washington trial court found that respondent left Florida to protect herself and the child. The court further found that disrupting the child and returning him to Florida would not be in the best interest of the child. The trial court concluded that the respondent's flight to protect herself and her child from physical and mental abuse counterbalanced the "unclean hands" doctrine of the act found in RCW 26.27.080, and the exercise of jurisdiction was in the interest of the child. The trial court had before it the parties, police records, and testimony concerning the reasons respondent left Florida. We find that the trial court's findings are supported by substantial evidence, and the findings support the conclusions of law. Therefore, the trial court did not abuse its discretion when it refused to decline jurisdiction under RCW 26.27.080(2).

Appellant further argues that even if the Washing-

ton court had jurisdiction under the PKPA and the UCCJA, it was precluded from exercising jurisdiction because custody proceedings were pending in Florida.

> (g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C. § 1738A(g).

> Simultaneous proceedings in other states. (1) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

RCW 26.27.060(1).

Appellant contends that Florida continuously attempted to assert jurisdiction since April 30, 1980. On June 23, 1980, after respondent left Florida, the Florida court transferred custody to the Florida Department of Health and Rehabilitative Services (HRS) with a provision that it test the child and submit a report so the court could determine which parent should have permanent custody. From February 1981 through January 1986, the Florida court issued pickup orders attempting to enforce its custody order of June 23, 1980. Finally, when HRS was unable to enforce the order in Washington, the Florida court granted temporary custody to appellant on February 27, 1986. That order was issued so the child could be returned to the state and HRS could complete the required report for a final determination. Thus, appellant argues, custody proceedings were pending which precluded Washington from asserting jurisdiction. When the petition for modification was filed in Washington, however, the State of Florida was not exercising jurisdiction substantially in compliance with either the UCCJA or, as already noted, the PKPA. It had entered an

order without notice and an opportunity to be heard, which violated subsection (e) of the PKPA, and also was contrary to the provisions of the UCCJA.[9] Thus, there were no simultaneous proceedings in Florida that precluded the Washington court from exercising jurisdiction under the UCCJA or the PKPA.

Further, we find that the exercise of jurisdiction by the Washington court serves one of the major purposes of the UCCJA of assuring that litigation take place in the state with the closest connection with the child and where the most significant evidence concerning the child's care, protection, training, and personal relationships is available. RCW 26.27.010(1)(c). While jurisdiction must be determined before the best interest of the child policy is invoked, the best interest of the child is served if the forum

---

[9] "Notice and opportunity to be heard

"Before a decree is made under this act, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to s. 61.1312." Fla. Stat. § 61.131 (1985).

"Notice to persons outside this state; submission to jurisdiction

"(1) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:

"(a) By personal delivery outside this state in the manner prescribed for service of process within this state;

"(b) In the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

"(c) By any form of mail addressed to the person to be served and requesting a receipt; or

"(d) As directed by the court, including publication, if other means of notification are ineffective.

"(2) Notice under this section shall be served, mailed, delivered, or last published at least 20 days before any hearing in this state.

"(3) Proof of service outside this state may be made by affidavit of the individual who made the service or in the manner prescribed by the law of this state, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.

"(4) Notice is not required if a person submits to the jurisdiction of the court." Fla. Stat. § 61.1312 (1985).

for the litigation is the state having the best access to relevant evidence. *See Quenzer v. Quenzer*, 653 P.2d 295, 304, (Wyo. 1982), *cert. denied*, 460 U.S. 1041, 75 L. Ed. 2d 794, 103 S. Ct. 1436 (1983). The Commissioner's Note following section 3 of the UCCJA, the jurisdiction section, states that "[t]here must be maximum rather than minimum contact with the state." Commissioner's Note, Unif. Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1979). At the time that Washington exercised jurisdiction, Washington was the home state. Shiloh had attended school here for 2 years. He had not been in Florida for over 5 years. The record is barren of evidence that he had any contacts with the state of Florida during that time. Florida court records from 5 years ago, when Shiloh was only 4 years old, have little bearing on the present and future of the 10–year–old child with education records, medical records, and living arrangements in the state of Washington for the last 2 years. Thus, Washington is the most appropriate forum for this litigation.

Appellant further argues that the recognition and modification provisions of the UCCJA[10] mandate exclusive jurisdiction in Florida. Like the continuing jurisdiction provision of the PKPA, the UCCJA requires the issuing state to give notice and an opportunity to be heard before

---

[10]RCW 26.27.130 provides:

"Recognition of out–of–state custody decrees. The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter."

RCW 26.27.140(1) provides:

"Modification of custody decree of another state. (1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction."

making its decree.[11] The February 27, 1986 order of the State of Florida was entered in violation of the notice requirement; therefore, it does not demand recognition. Further, it is implicit in the modification provision that a valid custody order must exist before a sister state with jurisdiction is prevented from modifying that order. Thus, the trial court did not err in refusing to decline jurisdiction based on appellant's argument that Florida had exclusive jurisdiction under the UCCJA.

Appellant also asks that this court award him attorney's fees under RCW 26.09.140. Appellant has provided no evidence, however, that he is unable to pay his attorney's fees and that respondent is able to pay the fees. *See In re Marriage of Campbell,* 37 Wn. App. 840, 846, 683 P.2d 604 (1984). Thus, appellant provides no basis for this court to require respondent to pay appellant's attorney's fees.

We affirm the judgment of the trial court and remand for further proceedings.

SCHOLFIELD, C.J., and PEKELIS, J., concur.

---

[11]*See* Fla. Stat. §§ 61.131, 61.1312 (1981) set forth in footnote 9. The Washington equivalent is RCW 26.27.040.