[No. 17431-6-II. Division Two. August 15, 1995.]

*In re Marriage of* HEATHER PAYNE, *Appellant,* and DAVID PAYNE, *Respondent.*

*Heather J. Payne*, pro se.
*Ross E. Taylor*, for respondent.

HOUGHTON, J. — Heather Payne appeals the trial court's refusal to revise a superior court commissioner's declination of jurisdiction over her action to dissolve her marriage to David Payne. The court in both instances found the State of Virginia to be a more convenient forum because of its significant contacts with the Paynes' two children. We affirm.

David and Heather Payne[1] were married on May 19, 1990. The parties' first child, Melanie Ryan Payne, was born in Virginia on August 12, 1990. Their second child, Austin Montana Payne, was born in Virginia on November 3, 1991.

At a March 3, 1993 hearing in Virginia regarding jurisdiction, David testified that he was born in Virginia in 1962, moved about due to his father's military service, returned to Virginia in 1969, and resided there continuously until June 1992. At the same hearing, David's niece and a friend of David's and Heather's each testified that Heather had lived in Virginia since approximately 1987.

David's mother and father, Heather's father and stepmother, and Melanie's and Austin's grandmother, all reside in Virginia. Heather's mother, stepfather, aunt and uncle live in Washington.

---

[1]We use the parties' first names only for convenience.

At the Virginia hearing, David presented testimony of several persons suggesting Heather told them, on numerous occasions during the marriage, that she married David only to "see what she could get out of him" and to have children; that their marriage would not last; and that she was going to take the children and go to Washington to be with her mother "with or without" David.

According to David, in June 1992, Heather convinced him to leave the job he had held for twelve years and move to Washington. They cashed out his retirement. They planned to move in with Heather's mother; Heather's uncle and stepfather had each promised David a job. The Paynes arrived in Washington on June 21, 1992.

David further testified at the Virginia hearing that he was never given a key to Heather's mother's home, that Heather and her mother immediately began to exclude him from decisions regarding the children, and that the marriage immediately began to deteriorate. The pay David received from Heather's stepfather was only half what David had been promised. David did, however, work in construction for Heather's uncle.

David also testified Heather ordered him to leave the home one month after they arrived in Washington. He then moved in with Heather's uncle, and stayed in Washington until late September 1992, attempting to reconcile with Heather and see the children. According to David, Heather did not cooperate and David was able to "go out with" her and the children only one time in those months.

Heather has not denied or responded specifically to the above allegations. She instead asserts via affidavit that David uses drugs, pays no attention to the children, and is "domineering, unreasonably jealous and demanding." She further asserts that David only left Washington due to his "dissatisfaction with the area." Moreover, she asserts David abandoned her and the children, returned to Virginia in late September 1992, and never paid child support or attempted to contact them. David responds that he did

call and talk to Heather. Although she works, Heather asserts she has had to rely on public assistance.

On December 4, 1992, David filed a custody petition with the Juvenile and Domestic Relations Court of Prince William County, Virginia. As Heather acknowledges, this was approximately five and one-half months after the family moved to Washington. David did not, however, serve Heather until February 19, 1993, nearly eight months after the move.

In the meantime, according to Heather, David attempted to forcibly abduct the children on December 18, 1992, assaulting Heather, the children, and Heather's mother in the process. He apparently left when the police were called. David admits generally that an "altercation" occurred, testifying that "[i]n the mid-part of December I made a failed attempt to go back [to Washington] and get my children."

On the same day as the "altercation," Heather, acting pro se, filed a petition for dissolution and obtained a domestic violence protection order. Heather asserted she had previously called the police in August when David tried to break into her aunt's home "to get" her and that he was armed at that time. She filed an amended petition through an attorney on February 24, 1993, and obtained an ex parte restraining order the same day. Heather asserted she had no "information of any . . . [other] custody proceeding concerning" her children, even though she admits she had been served in the Virginia action on February 19, five days earlier. She filed an objection to the Virginia jurisdiction immediately prior to a hearing on March 3, 1993.

David testified at the March 3 hearing in Virginia that he had never been served with a dissolution or custody petition from Washington and that he first became aware of the Washington action on the morning of the Virginia hearing. Heather does not contradict this assertion.

The hearing on Heather's Washington petition was apparently continued several times. On March 26, 1993, Da-

vid filed a special appearance through counsel contesting Washington jurisdiction, and a motion to dismiss for lack of jurisdiction. His supporting materials included a transcript of the March 3 Virginia hearing.

A superior court commissioner heard the argument on briefs. On April 28, 1993, the commissioner spoke by telephone with a judge of the Virginia Juvenile and Domestic Relations Court. In his letter decision dated May 19, 1993, the commissioner related that the court did not, "in any way, [ ] condone the attempted abduction by Mr. Payne." Nonetheless, the commissioner concluded "Virginia is the more appropriate forum to determine custody of these children" based upon the facts that

1. both children were born in the State of Virginia,

2. the children spent all of their lives until late June 1992 in . . . Virginia, and

3. . . . Virginia had been the children's home state within 6 months of the commencement of the custody action in . . . Virginia.

An order of dismissal was entered on June 23, 1993, which echoed the above findings and conclusion. Heather moved for revision by the superior court. Following oral argument, the court concluded that Washington

has jurisdiction; it's a question of whether . . . Washington should exercise . . . jurisdiction . . . . Virginia is a home state. . . . I think in this case there are significant contacts in . . . Virginia. I will deny the motion for revision.

Heather appeals the denial of the motion to revise.

■ We note initially that 28 U.S.C. § 1738A,

[t]he PKPA [Parental Kidnaping Prevention Act of 1980] should be considered whenever the court is asked to determine which of two or more states has jurisdiction to decide a custody dispute.

*In re Greenlaw*, 123 Wn.2d 593, 604, 869 P.2d 1024, *cert. denied*, 115 S. Ct. 333 (1994) (citing *In re Thorensen*, 46

Wn. App. 493, 497, 730 P.2d 1380 (1987) ("When there are conflicts between the [Uniform Child Custody Jurisdiction Act (UCCJA) and PKPA], the PKPA preempts state law under the supremacy clause; therefore, questions of jurisdiction arising in interstate custody matters must first be decided by reference to the PKPA" (Emphasis added.))).

The relevant portions of the PKPA provide:

(a) The appropriate authorities of every State shall enforce according to its terms, . . . any child custody determination made consistent with the provisions of this section by a court of another State.

(b) As used in this section, the term —

. . . .

(4) "home state" means the State in which, immediately preceding the time involved, the child lived with his parents, [or] a parent, . . . for at least six consecutive months . . .. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

. . . .

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical pres-

ence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction;

. . . .

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

. . . .

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C.A. § 1738A, Pub. L. § 8(a), 94 Stat. 3569 (1980).

Heather contends that Washington is the home state under RCW 26.27.020 because, although David filed his action in Virginia five and one-half months after the family moved to Washington, he did not serve her until nearly eight months after they moved. She asserts that by the time of service on her, she and the children had resided here long enough to make Washington the home state. According to Heather's analysis, the commissioner's refusal to exercise jurisdiction would be incorrect, because (1) the home state takes priority under the PKPA, and (2)

Virginia could not exercise jurisdiction substantially in accordance with the UCCJA, thereby voiding its jurisdiction under paragraphs (a) and (g) of the PKPA.

■ Whether an action is "commenced" for purposes of the PKPA or the UCCJA (RCW 26.27) is determined by reference to the relevant State's procedural rules governing the action. *See generally* David C. Minneman, 20 A.L.R.5th 700, 779-89, §§ 22-25 (1994) (collecting cases concerning when proceeding is "pending" under PKPA or UCCJA). David filed a "Petition Requesting Finding that Virginia is Home State of the Children Under [UCCJA]" in the Juvenile and Domestic Relations Court in Virginia. Jurisdiction and procedure in that court is governed by Virginia's Code of 1950 (Code) §§ 16.1-226 through -334. Under Code § 16.1-260, any matter within the jurisdiction of that court "shall be commenced by filing of a petition." Therefore, David's action was "commenced" for purposes of the PKPA and UCCJA on December 4, 1992, when he filed his petition.

Heather implicitly asserts that if David is allowed to file a petition and then wait indefinitely to serve her, the result would be unfair. This argument fails to note, however, that all states place a time limit on how long a filing is effective pending service. In Virginia, that period is one year. *See, e.g., Nelson v. Vaughan*, 210 Va. 1, 168 S.E.2d 126 (1969); Virginia Supreme Court of Appeals Rule 3.3. Under Virginia law, then, David could serve Heather any time before December 4, 1993, without losing the benefit of having "commenced" the suit. Here, David took two months to serve Heather, a period well within Virginia's one-year limit for service.

Heather next relies upon *Peterson v. Peterson*, 464 A.2d 202 (Me. 1983). That court interpreted the phrase " 'A court . . . shall not exercise its jurisdiction . . . if at the time of filing the petition a proceeding concerning . . . custody . . . was pending in a court of another state exercising jurisdiction substantially in conformity with' "

Virginia's version of the UCCJA.[2] *Peterson*, 464 A.2d at 204 (quoting 19 M.R.S.A. § 807(1) (1981)). The *Peterson* court held that filing a petition in the first state is insufficient to preclude the second state from exercising jurisdiction, because the first state is not yet "exercising jurisdiction." *Peterson*, 464 A.2d at 205.

We are unpersuaded by the strained reasoning of the *Peterson* court. PKPA paragraph (g) indicates the second state "shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State . . . ." The *Peterson* court's interpretation seems to read out the proviso that if a custody proceeding is pending in another court, then the second state shall not proceed. Moreover, the UCCJA mandates communication between courts of different states whenever jurisdictional conflicts may arise. Code § 20-129; RCW 26.27.060(3). The *Peterson* rule would allow parties to avoid this requirement.[3]

██ We believe the better analysis is to simply apply the PKPA/UCCJA. Step one of this analysis is to determine whether a home state exists, defining home state as "the State in which, immediately preceding the time involved, the child lived with his parents, [or] a parent, . . . for at least six consecutive months," including "[p]eriods of temporary absence." 28 U.S.C. § 1738(b)(4), (c)(2)(A)(i). Here, "the time involved" is the filing of the custody petition in Virginia. The children did not live with either parent in Virginia for six consecutive months immediately preceding that filing. Nor did they live with either parent in Washington for six consecutive months prior to that filing. No home state jurisdiction exists under this analysis.

---

[2]Washington also adopted this language: RCW 26.27.060(1).

[3]*See also* RCW 26.27.010(1)(b), (h) ("The general purposes of [the UCCJA] are to: . . . (b) Promote cooperation with the courts of other states . . .; (h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and . . . other states.").

Home state jurisdiction may exist, however, if Virginia[4] "had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent [there]from . . . because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State." 28 U.S.C. § 1738A (c)(A)(ii). Here, David left Virginia with the intention of moving permanently to Washington, and he stayed here for several months. These circumstances do not constitute a tolling "[p]eriod of temporary absence." Therefore, because David did not continue to live in Virginia during six months preceding his filing, no home state jurisdiction exists in Virginia. We note that while this conclusion appears contrary to the court commissioner and judge's conclusions, their conclusions did not rest on home state jurisdiction, but rather on inconvenient forum, which can only be reached under the PKPA if no home state exists.

Step two is to determine whether significant connections and substantial evidence exist in Washington or Virginia under 28 U.S.C. § 1738A(c)(2)(B)(ii)(I) and (II). Both the court commissioner and the judge found strong links with Virginia concerning the children's past care and upbringing, and potential future care. The record discloses that at the time of the hearing such links also existed in Washington, concerning the children's current care and potential future care. Therefore, both states might fairly be said to have significant connections with the children. We also note that because the Washington and Virginia versions of the UCCJA make special provisions for transferring evidence between state courts, the issue of which state has greater evidence is indeterminate. Code §§ 20-141 through -143; RCW 26.27.180 through .190.

Step three is to resolve this potentially conflicting jurisdiction by turning to RCW 26.27.070, inconvenient forum, which in relevant part reads:

(1) A court which has jurisdiction under this chapter to

---

[4]Our determination that Washington is not a home state precludes application of this subsection to it.

make an initial . . . decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum . . . and that a court of another state is a more appropriate forum.

(2) A finding of inconvenient forum may be made upon the court's own motion . . . .

(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others,:

(a) If another state is or recently was the child's home state;

(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum . . . ;

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in RCW 26.27.010.

(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his [or her] consent and submission to the jurisdiction of the other forum.

. . . .

(7) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings

in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses . . . .

Essentially, RCW 26.27.070(3)(a)-(c) restate the home state, significant connection and substantial evidence tests noted above, with one major exception: Under paragraph (3)(a), whether a state was *recently* a child's home state is a significant factor. Although the balance among all of the factors may be close here, at the time of filing the first petition, the only home state the children had ever had was Virginia. The determination of whether to decline to exercise jurisdiction is reviewed for an abuse of discretion. *Greenlaw*, 123 Wn.2d at 608-09. The trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons. *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). Here, the question was close, and the superior court did not abuse its discretion in finding Virginia the more convenient forum.

David seeks attorney fees under RCW 26.27.070(7). Because neither Washington nor Virginia "is clearly an inappropriate forum," we decline to grant attorney fees.

Affirmed.

SEINFELD, C.J., and MORGAN, J., concur.